**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

7827 TENNIS ENTERPRISES, INC.,

     Plaintiff,

v.             CIVIL ACTION NO. 3:25-0160

APPALACHIAN SPRAY FOAM SOLUTION, L.L.C.,
CODY HUNLEY,
CHASE HUNLEY, and
PROFOAM CORPORATION,

     Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Profoam Corporation's Motion for Summary Judgment (ECF No. 61, Def.'s Mot.). For the reasons stated below, the Court **GRANTS** the Motion **in part** and **DENIES** the Motion **in part**.

**BACKGROUND**

Plaintiff 7827 Tennis Enterprises, Inc. operates a tennis facility in West Virginia. *See* ECF No. 13, 2d Am. Compl. ¶ 1; Def.'s Mot., Ex. 2, Aldridge Dep. 9–10. After the facility's ceiling began leaking when it rained, Plaintiff's owner, Todd Aldridge, contacted Defendant Appalachian Spray Foam Solution, L.L.C. about installing an acrylic coating system on the roof. *See* Aldridge Dep. 5, 13, 17–18, 21, 29. Defendants Cody and Chase Hunley are the owners of Appalachian. *See* Def.'s Mot., Ex. 1, Hunley Dep. 10.

Appalachian agreed to apply primer, putty, and an acrylic coating to the roof. *See* Def.'s Mot., Ex. 4, at 1. The contract between Appalachian and Plaintiff stated Appalachian would provide a "Enduracoat Roof Acrylic Coating" with a "10yr Warranty." *Id.*

Appalachian purchased products for the work from Profoam. *See* ECF No. 64, Pl.'s Resp., Ex. A. Before Appalachian purchased the products, Jeremy Green, a Profoam sales representative, accompanied Cody Hunley to Plaintiff's facility. *See* Hunley Dep. 12, 31. According to Cody, Mr. Green was there to "get[] the information [they] needed on chemical, how much [they] needed, and putty and stuff like that." *Id.* at 32.

Mr. Green was also present for Appalachian's first three or four days of work on the roof. Hunley Dep. 44. Cody Hunley testified Mr. Green was there to "[m]ake sure that [Appalachian] didn't miss no steps." *Id.* He said Green "acted . . . almost like a supervisor . . . ." *Id.* at 46; *see also id.* ("He was just explaining each step . . . . How much putty to put over each screw or seam, or what direction to put the putty on a certain seam on the skylight, and then, . . . told us the distance and the thickness of how to measure the primer or the putty or the acrylic coating . . . ."). Cody confirmed Green did not "perform any work himself," and that it was Cody, not Green, "[w]ho was in charge of the job . . . ." *Id.* at 48; *see also id.* at 51 (stating "Green was not there to inspect [Appalachian's] work"). Green testified he "was just there to make sure [Appalachian] did the steps right." Def.'s Mot., Ex. 3, Green Dep. 20. He denied that he supervised or inspected Appalachian's work. *See id.* at 44.

The leaks in the facility returned soon after Appalachian completed its work. *See* Aldridge Dep. 58. Plaintiff's expert witness, Jason Chandler Lewis, opined that the leaks may have resulted from (1) a failure to properly apply putty to screws on the roof, (2) the roof's tendency to move in response to wind or people walking on it, (3) a failure to seal cavities surrounding skylights in the roof, (4) a failure to test the product on the roof before completing the work, (5) a failure to clean debris from the roof before applying the coatings, or (6) a failure to apply the coatings "with the right temperature consistency, humidity, and/or with enough time to allow a full cure set before

rain or heavy precipitation or . . . condensation had sat on the roof." Def.'s Mot., Ex. 6, Lewis Dep. 113; *see id.* at 58–60, 66–69, 83, 101–03.

Plaintiff sued Appalachian and the Hunleys in state court. *See* ECF No. 1, Ex. F 86. After Appalachian and the Hunleys removed the case to federal court, Plaintiff filed a Second Amended Complaint naming Profoam as a defendant. *See* ECF No. 13. The Second Amended Complaint raises claims of breach of contract, breach of express warranty, breach of implied warranty, fraud, and negligence. *See id.* at 3–5.

## LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence presented would allow a reasonable factfinder to find for the nonmovant. A fact is 'material' if it may influence the outcome of the suit under governing law." *Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024) (internal citations omitted). In deciding whether to grant summary judgment, "a court must view all facts, and reasonable inferences taken therefrom, in the light most favorable to the nonmoving party . . . ." *Id.*

## ANALYSIS

Profoam argues it is entitled to summary judgment on all five Counts[1] of Plaintiff's Second Amended Complaint. *See* Def.'s Mot. 1. The Court discusses each Count in turn.

---

[1] The Court will refer to Plaintiff's breach-of-contract claim as Count I, its breach-of-express-warranty claim as Count II, its breach-of-implied-warranty claim as Count III, its fraud claim as Count VI, and its negligence claim as count V.

## I.  Profoam Is Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim

Count I of the Second Amended Complaint alleges Defendants breached their contract with Plaintiff by "failing to perform the [coating] work up to the standard of a contractor with reasonable skill . . . ." 2d Am. Compl. ¶ 22. Profoam argues it is entitled to summary judgment because there is no record evidence indicating Profoam entered into a contract with Plaintiff. *See* Def.'s Mem. 7.

Plaintiff argues it can enforce Profoam's contract with Appalachian because it was an intended third-party beneficiary of that contract. *See* Pl.'s Resp. 2. According to Plaintiff, the evidence shows Profoam breached the contract. *See id.*

"[I]n order for a contract concerning a third party to give rise to an independent cause of action in the third party, it must have been made for the third party's *sole* benefit." *Woodford v. Glenville State Coll. Hous. Corp.*, 225 S.E.2d 671, 674 (W. Va. 1976) (emphasis added). As Profoam points out, the Profoam-Appalachian contract "plainly benefited both contracting parties: Profoam sold materials and Appalachian acquired materials for its roofing work." ECF No. 65, Def.'s Reply 2; *see* Pl.'s Resp., Ex. A. Since the evidence does not suggest Plaintiff was the sole beneficiary of the Profoam-Appalachian contract, the Court will grant Profoam's Motion with respect to Count I.

## II.  Profoam Is Entitled to Summary Judgment on Plaintiff's Breach of Express Warranty Claim

According to Count II, Defendants breached an express warranty by "refus[ing] to comply to the 10-year warranty" included in Plaintiff's contract with Appalachian. 2d Am. Compl. ¶ 26. Profoam argues "there is no evidence in the record that Profoam ever issued any warranty . . . to

Plaintiff." Def.'s Mem. 8. It points out that Plaintiff's claim is "based on the terms of its . . . contract with Appalachian," not on any representation by Profoam. *Id.*

Plaintiff argues its claim should survive because the ten-year warranty "was suggested by Profoam . . . ." Pl.'s Resp. 3. But Plaintiff cites no authority indicating a third party who suggests that a seller issue a warranty can be held liable when the seller breaches that warranty. Accordingly, the Court will grant Profoam's Motion with respect to Count II.

### III. Profoam Is Not Entitled to Summary Judgment on Plaintiff's Breach of Implied Warranty Claim

Count III alleges Defendants breached an implied "warranty of fitness of particular purpose . . . by failing to exercise the skill level of a reasonably skilled contractor so as to make the facility usable as an indoor tennis facility . . . ." *Id.* ¶¶ 29–30. Profoam argues it is entitled to summary judgment because (1) Mr. Green "had no knowledge regarding any specific need for the roof work," Def.'s Mem. 9 and (2) "there is no evidence . . . the acrylic products themselves are unsuitable for Appalachian's roofing job," *id.* at 10.

To prevail on a claim for breach of the implied warranty for fitness of purpose, a plaintiff must establish:

> (1) The seller at the time of the contracting had reason to know the particular purpose for which the goods were required; (2) the reliance by the plaintiff as buyer upon the skill or judgment of the seller to select suitable goods; and (3) that the goods were unfit for the particular purpose.

*Jones, Inc. v. W. Va. Wiedebusch Plumbing & Heating Co.*, 201 S.E.2d 248, 254 (W. Va. 1973). Here, there is a genuine dispute about whether each element is satisfied. First, a reasonable jury could conclude Mr. Green had reason to know of the purpose for which Appalachian would use the product. During his deposition, Green denied knowing Plaintiff's reason for purchasing an acrylic coating. *See* Green Dep. 32. But according to Cody Hunley, Green visited Plaintiff's

facility to "get[] the information [they] needed on chemical, how much [they] needed, and putty and stuff like that." Hunley Dep. 32. Visiting the site may have allowed Green to observe both the climate conditions at the site and the roof's movement in response to wind or people walking on it. *See* Lewis Dep. 59, 112–13. Based on this evidence, a reasonable jury could conclude Profoam had reason to know of Plaintiff's particular purpose.

A reasonable jury could also conclude Appalachian relied on Mr. Green to select a suitable product for the roof.[2] Green testified he recommended the brand of acrylic coating Appalachian ultimately used for the job. *See* Green Dep. 9–10; *see also* Hunley Dep. 28 (confirming Green "was helping" Appalachian "with the *product* and the pricing for this *particular* tennis job" (emphasis added)).

Finally, there is a genuine dispute about whether the product Profoam provided to Appalachian was unfit for Plaintiff's purpose. Plaintiff's expert witness opined that the leaks in the roof may have resulted from the environmental conditions in which the product was applied— namely high humidity. *See* Lewis Dep. 112 ("I believe it is absorbing water because it did not fully cure the way it is designed to . . . because it . . . was not applied in a stable environment that met the humidity criteria."). He also suggested the roof's movement in response to wind or people walking on it could have caused cracking in the product:

Q. . . . [D]o you know what was causing the cracking in the product?

A. [D]uring high-wind events, the building seemed to shift and move. When you would walk across the roof, you could tell that there were areas that the roof was kind of moving a little bit around those joints. . . .When we would walk across areas of the roof that the screws had already been cracked, we could see movement around them screws as well.

---

[2] That Green may have advised Appalachian, and not Plaintiff directly, on which product to use is irrelevant. Under West Virginia law, Plaintiff can sue to enforce an implied warranty included in the Profoam-Appalachian contract. *See* Syl., *Dawson v. Canteen Corp.*, 212 S.E.2d 82 (W. Va. 1975) ("The requirement of privity of contract in an action for breach of an express or implied warranty in West Virginia is hereby abolished.").

*Id.* at 58–59. Since the product may have interacted poorly with the conditions at the facility, a reasonable jury could conclude the acrylic coating Profoam supplied to Appalachian was unfit for this particular job. The Court will deny Profoam's Motion with respect to Count III.

## IV. Profoam Is Entitled to Summary Judgment on Plaintiff's Fraud Claim

Count IV alleges Defendants committed fraud by "knowingly . . . ma[king] the misrepresentation that [Appalachian's] work was covered by a" warranty. 2d Am. Compl. ¶ 33. Profoam argues Plaintiff's fraud claim fails with respect to Profoam because the allegedly fraudulent statement was made by Appalachian, not Profoam. [3] *See* Def.'s Mem. 16. Indeed, Mr. Aldrige testified he did not have "any belief" that the warranty "was issued by Profoam[.]" Aldridge Dep. 43. The Court will grant Profoam's Motion with respect to Count IV.

## V. Profoam Is Not Entitled to Summary Judgment on Plaintiff's Negligence Claim

Count V alleges Profoam acted negligently "by either failing to correctly supervise other defendants and/or failing to supply the correct coating." 2d Am. Compl. ¶ 39. Profoam argues it is entitled to summary judgment on Count V because (1) Profoam did not owe a duty to Plaintiff and (2) there is no evidence Profoam acted negligently. *See* Def.'s Mem. 10–11.

To make out a negligence claim, a plaintiff must show the defendant violated "a duty owed to the plaintiff." Syl. Pt. 3, *Aikens v. Debow*, 541 S.E.2d 576 (W. Va. 2000) (quoting Syl. Pt. 4, *Jack v. Fritts*, 457 S.E.2d 431 (1995)). A person has a "duty to use care" if it is foreseeable "that harm may result if" such care is "not exercised." *Id.* at Syl. Pt. 8 (quoting Syl. Pt. 3, *Sewell v. Gregory*, 371 S.E.2d 82 (1988)).

---

[3] Plaintiff's Response failed to address Profoam's Motion with respect to Count IV. Profoam suggests it is entitled to summary judgment on this basis alone. *See* Def.'s Reply 10. Profoam is mistaken. Federal Rule of Civil Procedure 56(e) provides that, "[i]f a party fails to . . . properly address another party's assertion of fact" in a summary-judgment motion, a court may "grant summary judgment *if the motion and supporting materials . . . show that the movant is entitled to it . . . .*" (emphasis added). Accordingly, a nonresponse to summary-judgment is not dispositive. The movant still bears the burden to show it is entitled to relief.

Here, there is a genuine dispute about what Mr. Green did during the first few days of Appalachian's work on Plaintiff's roof. Green said he "was just there to make sure [Appalachian] did the steps right." Green Dep. 20. Cody Hunley, in contrast, said Green "acted . . . almost like a supervisor . . . ." Hunley Dep. 44. Regardless of which narrative the Court ultimately believes,[4] it could conclude Profoam owned a duty to Plaintiff. Even if Green merely told Appalachian the steps for applying the coating and the order in which to complete them, his doing so without care could foreseeably result in harm to Plaintiff.

In addition, a reasonable jury could conclude Mr. Green, and by extension Profoam, acted negligently. Mr. Lewis testified the leaks in Plaintiff's ceiling may have been caused by a failure to properly apply putty to screws on the roof, a failure to seal cavities surrounding skylights in the roof, or a failure to test the product on the roof before completing the work. *See* Lewis Dep. 59–60, 66–69, 83. It is undisputed that Green was present when Appalachian was applying putty to screws and cavities on the roof. *See* Hunley Dep. 79. Cody Hunley testified that Green had "advis[ed]" the Hunleys "on how to use" the putty. *Id.* He said Green explained "[h]ow much putty to put over each screw or seam, or what direction to put the putty on a certain seam on the skylight . . . ." *Id.* at 46. A jury, then, could conclude Green negligently instructed and supervised Appalachian when it was applying the putty.

It is also undisputed that Mr. Green advised Appalachian on the steps for applying an acrylic coating. Green's own testimony indicates testing the product on the roof was not one of these steps. *See* Green Dep. 20–21, 43–44. Accordingly, a jury could conclude Green acted

---

[4] It is for the Court, not the jury, to determine whether Profoam owed Plaintiff a duty. *See* Syl. Pt. 5, *Aikens*, 541 S.E.2d 576; *Shenandoah Life Ins. Co. v. Hawes*, 256 F. Supp. 366, 368 ("The federal courts must, in a diversity action, resort to the State's substantive law to determine those issues which should be submitted to the jury . . . .").

negligently by failing to recommend that Appalachian test the product on the roof. The Court will deny Profoam's Motion with respect to Count V.

## CONCLUSION

The Court **GRANTS in part** and **DENIES in part** Profoam Corporation's Motion for Summary Judgment (ECF No. 61). The Court **ENTERS JUDGMENT** in favor of Profoam with respect to Counts I, II, and IV of Plaintiff's Second Amended Complaint.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:     June 26, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE