**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

7827 TENNIS ENTERPRISES, INC.,

                Plaintiff,

v.                                                  CIVIL ACTION NO. 3:25-0160

APPALACHIAN SPRAY FOAM SOLUTION, L.L.C.,
CODY HUNLEY,
CHASE HUNDLEY, and
PROFOAM CORPORATION,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Profoam Corporation's Motion in Limine to Exclude Certain Opinions of Chandler Lewis and to Limit His Opinions (ECF No. 83, Def.'s Mot.). For the reasons stated below, the Court **GRANTS** the Motion **in part** and **DENIES** the Motion **as moot in part**.

**BACKGROUND**

Plaintiff 7827 Tennis Enterprises, Inc. operates a tennis facility in West Virginia. *See* ECF No. 13, 2d Am. Compl. ¶ 1; ECF No. 61, Ex. 2, Aldridge Dep. 9–10. After the facility's ceiling began leaking when it rained, Plaintiff's owner, Todd Aldridge, contacted Defendant Appalachian Spray Foam Solution, L.L.C. about installing an acrylic coating system on the roof. *See* Aldridge Dep. 5, 13, 17–18, 21, 29.

Appalachian agreed to apply primer, putty, and an acrylic coating to the roof. *See* ECF No. 61, Ex. 4, at 1. Appalachian purchased products for the work from Profoam. *See* ECF No. 64, Ex. A. The leaks in the facility returned soon after Appalachian completed its work. *See* Aldridge Dep. 58.

Plaintiff sued Appalachian and its owners in state court. *See* ECF No. 1, Ex. F 86. After Appalachian removed the case to federal court, Plaintiff filed a Second Amended Complaint naming Profoam as a defendant. *See* 2d Am. Compl.

7827 Tennis identified Jason Chandler Lewis as a non-retained expert. *See* ECF No. 84, Def.'s Mem. 3. During his deposition, Mr. Lewis opined that the products Appalachian applied to the roof "were not adhered properly to the existing roof . . . and . . . were not applied in an environment with the right temperature consistency, humidity, and/or with enough time to allow a full cure set before rain or heavy precipitation or dew or condensation had sat on the roof." ECF No. 90, Pl.'s Resp., Ex. 1, Lewis Dep. 113.  Lewis also testified he "believe[d]" the product Appalachian applied to the roof was absorbing water. *Id.* at 105.

Mr. Lewis's deposition included the following exchange:

Q.    Now, with regard to humidity issues, absorption issues, . . . what would you need to do, other than visually look at something, to be able to make those determinations?

A.    Take a sample off the roof of a cross section where the coating had been applied, see how thick it is, send that material off to a lab to test it where they could tell you . . . this midsection contains these specific chemical properties. This upper section contains this specific property. There is this much moisture in layer 1. There's this much moisture in layer 2. Test it with water. Soak it in water for 24 hours and see if it retains water weight.

. . .

Q.    . . . [N]one of that testing was performed in this case?

A.    It was not.

Q.    . . . [A]re you going to . . . testify . . . that there was humidity issues that are -- that caused a breakdown of this particular product . . . -- or that there was some issue with the product that causes it to absorb water?

A.    To say yes or no to that question, I would want to know what days the Hunley brothers were on the roof working, and be able to look at those days and dates and time and compare to a weather chart for those dates and times when it

-2-

was applied to be able to study . . . what were the parameters that those guys were working around that may have been a challenge for them that they didn't acknowledge.

Q.      Isn't that just one part of the puzzle?

A.      It is one part of the puzzle.

Q.      You also have to look at the product itself in its technical data sheets?

A.      Correct.

Q.      And you have not done any of that?

A.      Correct.

*Id.* at 114–16. Lewis also testified about the limits of laboratory testing: "[D]oing lab work we control all parameters of the knowns and unknowns. In the real world, it doesn't always function the way we think it will, because we can only compare it to the lab." *Id.* at 111. He explained it was thus necessary "to take real world sample to compare to the lab [so] we can evaluate the differences and form a conclusion . . . ." *Id.* at 111–12.

Profoam's Motion asks the Court to "exclude any opinion or testimony that the acrylic coating products" applied to Plaintiff's roof "were compromised, failed to adhere, failed to cure, or lost water-repellency because of moisture, humidity, temperature or other application conditions." Def.'s Mot. 1. It also asks "that Plaintiff be precluded from presenting any new, supplemental, or materially expanded opinions that were not timely disclosed." *Id.* at 2.

## ANALYSIS

### A. Plaintiff Has Not Satisfied Rule 702

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

7827 Tennis has not shown Mr. Lewis's opinions are "the product of reliable principles and methods" and "based on sufficient facts or data." Lewis himself testified he would need the following information to determine whether the roof coating was applied in the wrong conditions and was absorbing water: (1) the results of laboratory testing of the coating, (2) a comparison between a "real world sample" of the coating and a sample tested in a laboratory, (3) the weather conditions at the tennis center when Appalachian was working, and (4) the "technical data sheets" for the products applied to the roof. Lewis acknowledged he had none of that information at the time of his deposition, and Plaintiff has offered no evidence showing Lewis subsequently reviewed that information.

7827 Tennis argues Mr. Lewis's "personal observations" of the roof are "sufficient data" under Rule 702. Pl.'s Resp. 2. But Lewis himself testified he needed much more information to form an opinion about the cause of the leaks.

Plaintiff also argues Mr. Lewis's discussion of the limits of laboratory testing shows his observations were an adequate basis for his opinions. *See id.* at 2–3. The Court disagrees. Lewis did note that laboratory conditions are more "controlled" than conditions in "the field . . . ." Lewis Dep. 111. But Lewis said the cure for this mismatch is comparing field samples with samples tested in a laboratory, not relying on observations alone.

Since Plaintiff has failed to show Mr. Lewis's opinions are reliable, the Court will exclude them.

**B. Profoam's Request to Preclude Supplemental Opinions Is Moot**

As noted above, Profoam's Motion asks the Court for an order precluding 7827 Tennis from offering any untimely disclosed opinions. Plaintiff only objects to such an order to the extent it would exclude opinions about 7827 Tennis's future-repair damages. *See* Pl.'s Resp. 3; ECF No. 97, at 2–3. Since the Court has already excluded these opinions, *see* ECF No. 97, at 5–6, Profoam's request is moot.

**CONCLUSION**

The Court **GRANTS in part** and **DENIES as moot in part** Profoam's Motion in Limine to Exclude Certain Opinions of Chandler Lewis and to Limit His Opinions (ECF No. 83). The Court **ORDERS** Plaintiff not to introduce any opinion or testimony that the acrylic coating products applied to the tennis center's roof were compromised, failed to adhere, failed to cure, or lost water-repellency because of moisture, humidity, temperature or other application conditions.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        August 6, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE